**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ana Fimbres, | ) |
| Plaintiff, | ) No. CV-11-0349-TUC-DTF |
| vs. | ) **ORDER** |
| Michael J. Astrue, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

Plaintiff Ana Fimbres brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Plaintiff filed a motion for summary judgment. (Doc. 17.) Defendant responded with a motion to remand, to which Plaintiff replied. (Docs. 20, 21, 22.) The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 7, 13.) The Court finds this case should be remanded for further proceedings.

## PROCEDURAL HISTORY

Fimbres filed an application for Supplemental Security Income (SSI) and Social Security disability insurance benefits (DIB) on January 18, 2008. (Administrative Record (AR) 85, 92.) Fimbres alleged disability from January 1, 2005. (AR 85, 92.) Fimbres's applications were denied upon initial review (AR 63-66) and on reconsideration (AR 70-76). A hearing was held on September 30, 2009 (AR 28-42), after which ALJ Norman R. Buls found, at Step Two, that Fimbres was not disabled (AR 15-23). The Appeals Council denied Fimbres's request to review the ALJ's decision. (AR 1.)

**FACTUAL HISTORY**

Fimbres was born on August 11, 1973, making her 31 at the alleged onset date of her disability. (AR 85.) She completed school through the eighth grade and has a GED. (AR 32.) From 1994 through 2006, she worked in various jobs, typically multiple different jobs per year, as a waitress, doing security, customer service and caregiving, earning between $600 and $12,000 per year. (AR 98-104, 147, 164-65.) Fimbres spent the first eight months of 2007 in jail for negligent homicide and DUI. (AR 33, 35.) For most of 2008 and 2009, Fimbres was employed at Café 54, a non-competitive work placement with an onsite job coach. In mid-2009, she worked briefly at a grocery store but was fired, after which she returned part-time to Café 54. (AR 479, 484.)

The ALJ found that Fimbres had worked since her alleged onset date but that, based on her earnings, it did not amount to substantial gainful activity. (AR 17.) He determined that Plaintiff had three medically determinable impairments: depression, Post Traumatic Stress Disorder (PTSD) and polysubstance abuse in full remission. (AR 17.) He concluded, at Step Two, that Fimbres did not have a severe impairment such that she would be significantly limited in her ability to perform basic work activities for 12 consecutive months. (AR 18.)

**STANDARD OF REVIEW**

The Commissioner employs a five-step sequential process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520, 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step.

1  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

2  "The ALJ is responsible for determining credibility, resolving conflicts in medical
3  testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
4  1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the
5  Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C.
6  § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance."
7  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d
8  1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only
9  "when the ALJ's findings are based on legal error or are not supported by substantial
10 evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir.
11 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the
12 evidence, and if the evidence can support either outcome, the court may not substitute its
13 judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402
14 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir.
15 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a
16 specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.
17 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must
18 consider the evidence that supports as well as detracts from the Commissioner's conclusion.
19 *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

20                          **DISCUSSION**
21     **Motion to Remand**

22  Defendant requests that the case be remanded for a de novo hearing and evaluation
23 because the ALJ did not use the proper analysis when assessing Step Two. In light of this
24 request, the case will be remanded for further proceedings. However, the Court finds it
25 expedient to address Plaintiff's claims of error before remanding the case, to avoid repetition
26 of the errors identified below.

27     **Treating Psychiatrist**
28     Plaintiff argues the ALJ rejected the opinion of her treating psychiatrist without

providing legitimate reason. Plaintiff's treating psychiatrist, Dr. Steven M. Diez de Pinos, completed a medical source statement regarding Plaintiff's level of impairment on September 11, 2008. (AR 287-90.) Dr. Diez de Pinos found that Plaintiff was mildly to moderately limited in her ability to interact appropriately with the public, to respond appropriately to criticism, and to get along with coworkers without unduly distracting them. (AR 288-89.) He indicated that Plaintiff was moderately limited in her ability to work in proximity to others without distraction and to respond appropriately to changes in work setting. (*Id.*) Most critically, he opined that Plaintiff was moderately to markedly limited in her ability to remember, understand and carry out detailed instructions, to maintain concentration for extended periods, to perform activities within a schedule, and to complete a normal workday and week without psychological interruptions. (AR 287-88.) The doctor commented that medication had been of a partial benefit only and Plaintiff had missed work due to psychiatric symptoms. (AR 290.) He noted that Plaintiff could become completely inwardly focused and lose track of tasks and the external world. (*Id.*) He stated that her impairment would extend beyond a year and that, although her symptoms were variable, the severity of her PTSD made her unable to sustain full time work. (*Id.*)

The ALJ stated that he gave little weight to the opinion of Dr. Diez de Pinos because: (1) his opinion is inconsistent with his own notes, which indicate, as of August 2009, few notable abnormalities upon mental status examination; and (2) her ability to sustain employment and self-reported daily activities indicate a higher level of functioning than he opined.[1] (AR 22.)

Dr. Diez de Pinos's opinion is contradicted by examining physician Dr. Kathleen V. Prouty and consulting doctor, Jack A. Marks. Dr. Prouty concluded that Plaintiff's understanding and memory, ability to sustain concentration, social interaction and adaptation were all within normal limits and would not impose any limitations for a twelve-month

---

[1] Defendant argues that it was proper for the ALJ to reject Dr. Diaz de Pinos's opinion for a number of reasons. However, the ALJ did not rely on any of the reasons cited by the Commissioner in rejecting the doctor's opinion. (Doc. 21 at 16.)

1 period. (AR 271.) Dr. Marks concluded Plaintiff did not have a severe impairment. (AR 272-
2 84.)

3 When there is a conflict between the opinions of a treating physician and an
4 examining physician, "[i]f the ALJ wishes to disregard the opinion of the treating physician,
5 he or she must make findings setting forth specific, legitimate reasons for doing so that are
6 based on substantial evidence in the record." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th
7 Cir. 1987). Thus, the Court assesses whether the ALJ's rejection of the treating physician's
8 opinion is based on legitimate reasons supported by substantial evidence.

9 The Court finds that the ALJ's reasons for rejecting Dr. Diez de Pinos's opinion are
10 not legitimate nor supported by substantial evidence. First, the ALJ found that the doctor's
11 opinion was contrary to his own notes, however, he mentioned only the mental status exam
12 from one day of progress notes. A review of the entirety of the doctor's notes, which range
13 from early 2008 to mid-2009, support his findings of moderate to marked impairment.
14 Although Plaintiff had periodic improvement, the notes reveal that Plaintiff tried many
15 different medications with limited success. (*See, e.g.*, AR 314, 317, 493, 494, 498.) In June
16 2008 and September 2009, Plaintiff had suicidal ideation. (AR 314, 430.) At her November
17 2008 and April 2009 appointments, Plaintiff informed the doctor that she recently had missed
18 several days of work. (AR 364, 498.) Further, in June 2009, after trying briefly to work in
19 a competitive environment, the doctor noted that Plaintiff lost her job due to absenteeism.
20 (AR 479.) The doctor's notes also reflect ongoing instances when Plaintiff could not keep
21 track of things, from missing appointments to not knowing the name of her other doctors or
22 prescriptions. (AR 314, 475, 479, 494.) Dr. Diez de Pinos's opinion is not contrary to his
23 notes.

24 Second, the ALJ found that Plaintiff's ability to sustain employment and her daily
25 activities indicated that her functioning was not moderately to markedly impaired as her
26 treating doctor opined. As found by the ALJ, during the relevant period, Plaintiff never
27 worked enough to rise to the level of disqualifying substantial gainful activity. (AR 17.)
28 Further, Plaintiff's work history in the competitive market is limited and sporadic. She held

1 one job from October 2004 to May 2005, then one job from June 2005 to July 2005, followed
2 by a job from March to May 2006. (AR 164.) After she was released from prison, the
3 majority of her work was in a non-competitive supportive environment at a café with a job
4 coach. (AR 38, 41, 441.) When Plaintiff obtained a competitive job, she was unable to
5 sustain it. (AR 36, 441, 479.) Even at the café, she had attendance problems due to anxiety
6 and depression. (AR 36-37.) The ALJ noted that Plaintiff recently had not needed reminders
7 to attend work or on how to do specific work tasks. However, her need for reminders appears
8 to be cyclical and she had been in this supportive job for approximately one-and-a-half years
9 and was familiar with the tasks and systems. Fimbres missed appointments or needed
10 assistance in remembering things such as medication in May, June, July, and October 2008
11 (AR 292, 295, 392, 394, 456); in September 2008, the case manager had to remove her from
12 work due to a report of possible intent to self harm (AR 430); Plaintiff's case manager had
13 to intercede with her regarding calling into work in October 2008, January 2009, and March
14 2009 (AR 334, 355, 377); and she was fired from a job for not calling in sick in June 2009
15 (AR 484).

16       The ALJ is correct that Plaintiff reports a fairly high level of daily activity. However,
17 her major problems with sustaining employment are interacting with others, absenteeism due
18 to mental health issues, and her need to be reminded of tasks and schedules. These issues are
19 less disabling in the context of one's daily activities. She was not required to interact
20 consistently with anyone other than her children and she could be flexible as to when she
21 accomplished tasks depending on her mental state. With regard to her difficulty with
22 schedules and remembering things, this was apparent in her personal life, as she missed
23 appointments and forgot important medical information. (AR 292, 295, 314, 475, 479, 494.)
24 Additionally her daughter was fifteen at the time Plaintiff alleges her disability began and she
25 stated that her daughter would help with her younger son. (AR 300.)

26       The Court finds that the ALJ erred in its rejection of Dr. Diaz de Pinos's opinion.
27 **Plaintiff's Credibility**
28       The ALJ found Plaintiff's statements concerning the severity of her symptoms not

- 6 -

1  credible in light of the objective medical evidence, her work activity (that he found not to be
2  significantly limited in a 12-month period), and her ability to maintain her household and
3  care for her children. The ALJ also noted that Plaintiff failed to follow up with treatment
4  after her 2005 and 2006 suicide attempts.

5        In general, "questions of credibility and resolution of conflicts in the testimony are
6  functions solely" for the ALJ. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (quoting
7  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may
8  certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a
9  determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec.*
10 *Admin.,* 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346
11 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily
12 reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's
13 testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-
14 step analysis." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007).

15        "First, the ALJ must determine whether the claimant has presented objective medical
16 evidence of an underlying impairment 'which could reasonably be expected to produce the
17 pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell,* 947 F.2d at 344). ALJ Buls
18 found Fimbres had satisfied part one of the test by proving an impairment that could produce
19 the symptoms alleged. (AR 19.) Second, if "there is no affirmative evidence of malingering,
20 the ALJ can reject the claimant's testimony about the severity of her symptoms only by
21 offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue,* 533 F.3d
22 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir.
23 1996)). Defendant argues that there is affirmative record evidence of malingering, even
24 though the ALJ did not make a finding that Plaintiff was malingering. Defendant cites the
25 fact that Plaintiff was found to be dishonest during a vocational evaluation. Specifically, the
26 test administrator noted that Fimbres used notes during an arithmetic test and a test for
27 following oral directions, and that she invalidated her score on a sorting test by changing her
28 work. (AR 113, 115, 116.) This could be relevant to Plaintiff's credibility, although the ALJ

did not consider it, but it is not evidence of malingering regarding her psychological symptoms. Next, Defendant argues that Dr. Kathleen Prouty, an examining psychologist, noted that Fimbres was rather dramatic, "raising concerns over symptom exaggeration." (AR 270.) This singular reference by Dr. Prouty is the only time in the 500-page record that anyone even raised the possibility that the claimant might be falsifying her symptoms. This is not sufficient "affirmative" evidence of malingering. Therefore, to support his discounting of Fimbres's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Vasquez v. Astrue*, 547 F.3d 1101, 1105 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ's finding that Fimbres was not entirely credible regarding her limitations was based on the medical record that indicates her symptoms responded well to medication, her failure to obtain treatment after her 2005 and 2006 suicide attempts, the work activity in which she engaged post-onset date, and her daily activities. The ALJ acknowledged that Plaintiff had experienced exacerbation of her symptoms, but found that such occasions were followed by improvement through medication or circumstances. As discussed above, this typifies a cyclical pattern rather than a demonstration that treatment resolved her symptoms. In fact, the record demonstrates that Fimbres tried many medications over the years with limited success. (*See, e.g.*, AR 314, 317, 493, 494, 498.) Her treating psychiatrist noted in his evaluation, "[a]lthough her PTSD symptoms are variable and effect her as such, the underlying issues and severity make the patient unable to sustain any meaningful full time work." (AR 290.)

While the record does not demonstrate that Plaintiff consistently sought treatment in 2005 or 2006, she did engage in therapy while in prison in 2007 and in the years following. Further, an ALJ may not draw inferences based on a failure to seek treatment without inquiring for an explanation by the claimant or considering other record evidence that may explain the lack of care. SSR 96-7p. The ALJ did not seek an explanation for lack of treatment during the hearing or from the record. (AR 28-42.) Additionally, lack of treatment is a questionable basis on which to reject mental health claims because mental illness may

1 impair judgment resulting in failure to seek assistance. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009). This is illustrated here by the doctor's note during Fimbres's 2006 hospitalization that her judgment appeared to be compromised such that she was not engaging in treatment. (AR 450.) In sum, the Court does not find the lack of treatment persuasive evidence regarding Plaintiff's credibility. Unlike an assertion of pain, for which failure to seek treatment is incongruous with a disabling condition, not seeking mental health treatment is consistent with the impairment.

The ALJ also relied on the work activity in which Fimbres engaged after the alleged onset date. As discussed more extensively above, Plaintiff's work after the onset date was in a non-competitive environment and she needed periodic assistance to maintain that employment. The record indicates she was unable to sustain competitive work.

Fimbres is correct that "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). This is particularly true because many activities conducted at home do not transfer easily to the workplace. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ contrasted Plaintiff's daily activities – shopping and taking public transportation, personal care, housework, cooking, watching movies, reading slowly, socializing, hooking up a computer and updating a resume, and child care – with her testimony about her symptoms – that she had difficulty concentrating, remembering information and understanding complicated instructions, she could not work in a fast-paced environment, and sometimes she could not get out of bed in the morning and this has impaired her attendance at jobs. (AR 19, 22.) This is a permissible use of a claimant's daily activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, as discussed above, Plaintiff's activities of daily living may not be readily transferable to the workplace. Additionally, Plaintiff was receiving social services that assisted in her activities of daily living. At the time of her hearing, she was living in a residential facility with supportive services. Further, she had been receiving case management services for a period

- 9 -

of years from La Frontera (AR 39), with frequent check-ins regarding work, medical needs, transportation, and probation. (*See, e.g.*, AR 332, 336, 339, 341, 345, 355, 367, 387, 400, 402, 424, 430.)

On remand, the ALJ must reconsider his credibility finding because the record does not support his finding that she responded well to treatment or that her work activity at Café 54 evinces an ability to work full-time in a competitive environment; he failed to seek an explanation for Plaintiff's periodic lack of mental health treatment; and her activities of daily living may not suggest a level of functionality equivalent to competitive work.

**Vocational Rehabilitation Counselor**

Cecilia Romero, MS, provided a July 29, 2009 statement based on her two years of experience as Fimbres's Vocational Rehabilitation Counselor through a state program. (AR 441.) She reported that Fimbres had learned the job of cake decorator at Café 54 but did need the services of a job coach, primarily on the issue of attendance at work. (*Id.*) She noted that when Fimbres attempted to work in a competitive environment she was unsuccessful because she did not have any supportive services in the transition. (*Id.*) In her opinion, Fimbres could not currently work in a competitive environment but with sufficient support might ultimately be able to work part- or full-time in a competitive job. (*Id.*)

The ALJ discounted the testimony of Romero because it was not a specific assessment of the nature and severity of the claimant's impairments but a conclusory assessment that the claimant was disabled. (AR 21.) Further, the ALJ discounted Romero's suggestion that Fimbres needed accommodation in the workplace because the claimant testified that her case manager was no longer calling her about work attendance or to check on her work, and that she did not need reminders on how to prepare the desserts.

The ALJ is correct that a decision on whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). He is not required to defer to others' opinions on this matter. However, to the extent Romero's statement focuses on the claimant's impairments and their impact on her ability to work, the ALJ was required to consider it as non-medical source evidence. 20 C.F.R. §§ 404.1513(d), 416.923(d). When an

1 ALJ discounts such evidence from an "other source," he must provide specific reasons, germane to that witness. *Talley v. Astrue*, 400 F. App'x 167, 169 (9th Cir. 2010 (citing *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).

The ALJ discounted Romero's opinion that Fimbres needed workplace accommodation, particularly as to attendance, based on Fimbres's testimony that she had not needed on-the-job assistance lately. Romero's July 29, 2009 statement discussed her experience with Fimbres over the course of two years, including her recent failed attempt to work in a competitive job. Nothing in this statement contradicted Fimbres's September 30, 2009 testimony that she hadn't needed assistance from her job coach or reminders about attendance "lately." (AR 38, 39.) Fimbres acknowledged that she lost a competitive job (as recently as June 2009) due to attendance, to which Romero referred in her statement. (AR 37.) Further, Fimbres testified that the reason she was not seeking full-time work at one of her prior jobs was her difficulty with attendance because of anxiety and depression. (AR 36-37.) Thus, Fimbres's testimony as a whole indicates a problem with attendance as do other portions of the record. Thus, this was not a germane reason to discount Romero's testimony, nor was the ALJ's rejection of her testimony supported by substantial evidence.

## **CONCLUSION**

The Court concludes Defendant's request for remand should be granted. Plaintiff requests a remand for award of benefits for the period from April 1, 2008, to the present. Defendant seeks a remand for further proceedings rather than an award of benefits.

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, if there are no outstanding issues because "the record has been developed fully and further administrative proceedings would serve no useful purpose, the . . . court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, outstanding issues remain because the ALJ has not analyzed Steps Three through Five to assess Fimbres's residual functional capacity. *See Kent v. Astrue*, 335 F. App'x 673, 675 (9th Cir. 2009).

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 17) is **GRANTED in part**, to the extent it seeks a remand for further proceedings, and **DENIED in part** to the extent it seeks an award of benefits.

**IT IS FURTHER ORDERED** that Defendant's Motion to Remand (Doc. 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is remanded to the ALJ for a new hearing and further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court should enter judgment and close this case.

DATED this 19th day of October, 2012.

D. Thomas Ferraro
United States Magistrate Judge